IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Shawn Worley, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) 11 CV 50211 |
| | ) |
| Carolyn W. Colvin, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

The Claimant, Shawn Worley, brings this action under 42 U.S.C. §405(g), seeking reversal or remand of the decision by Respondent, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"),[1] denying the Claimant's application for disability insurance benefits under Title II of the Social Security Act ("SSA"). This matter is before the Court on cross-motions for summary judgment.

The Claimant argues that the Commissioner's decision denying her application for benefits should be reversed or remanded for further proceedings because the Administrative Law Judge ("ALJ") erred at step five of the sequential process. The Commissioner argues that the ALJ's decision should be affirmed because the ALJ did not err. For the reasons set forth more fully below, the Claimant's motion for summary judgment is denied, and the Commissioner's motion is granted.

---

[1] Commissioner Carolyn W. Colvin has been automatically substituted as the Defendant-Respondent pursuant to Federal Rule of Civil Procedure 25(d).

1

# I. ADMINISTRATIVE DECISION

The Claimant filed an application for both disability insurance benefits (DIB) and supplemental security income. He was denied through every administrative step, including at his administrative hearing, where the Claimant was represented by counsel. At the hearing, the Claimant and Tyra Watts, a vocational expert ("VE") testified. At the very outset of the VE's testimony, the following exchange occurred between the ALJ and the VE:

Q: You understand that your testimony has to be pursuant to the DOT? If you deviate from the DOT, please explain the reasons for your deviation?
A: Yes, our honor. R. 47.

The ALJ then provided a series of hypotheticals to the VE, per standard practice. The hypotheticals incorporated the ALJ's residual functional capacity ("RFC") that the ALJ determined was applicable for the Claimant. As part of the RFC, the ALJ found that the Claimant "could lift about 20 pounds occasionally, 10 pounds more frequently." R. 49. Moreover, the ALJ restricted the Claimant's possible jobs so as to limit him to meet, greet, make change, and give simple instructions and directions. R. 50. The hypotheticals also provide that the person could "understand, follow and remember concrete instructions." R. 50.

Although the VE found that the Claimant could perform his past work, the ALJ found that the Claimant could not perform his past relevant work. R. 50-51. Specifically, the ALJ further restricted the possible jobs the Claimant could perform because of the Claimant's anti-social behavior and the stress involved in his past

relevant work. Even after incorporating this restriction, the VE found that there will still other jobs the Claimant could perform. R. 51. The VE specifically identified two jobs and their respective DOT code numbers: information clerk (237.367-018) and route delivery clerk (222.587-034). R. 51.

Importantly, in determining the RFC, the ALJ did not make any credibility findings and simply accepted the Claimant's testimony at the hearing.

The Claimant's attorney did not object to the VE's qualifications or any questions asked of her by the ALJ. Moreover, the Claimant's counsel did not question the VE.

After the hearing, the ALJ issued a decision denying benefits. The ALJ's decision stated the following as the Claimant's RFC: the Claimant could perform light work, with limitations, including that the Claimant was limited to occasional climbing, stooping and crawling due to back pain and occasional knee pain; could lift twenty pounds occasionally and ten pounds more frequently; that the Claimant have a sit or stand option; that the Claimant not be required to engage in assembly work and could only occasionally reach and grasp because of mild carpal tunnel syndrome; that the Claimant's work be restricted to simple unskilled or low semi-skilled functions; and further that the Claimant's work be limited to superficial interpersonal contact with supervisors, co-workers, and the public, "which includes meeting, greeting, making change, and giving simple instructions and directions." R. 13.

The ALJ's decision also found that the Claimant could perform the job functions of information clerk and route delivery clerk. R. 19-20. Consequently, the ALJ found that the Claimant was not disabled. R. 20.

## II. LEGAL STANDARDS

A. Disability Standard

Disability insurance benefits are available to a claimant who can establish that she is under a "disability" as defined in the SSA. *Liskowitz v. Astrue*, 559 F.3d 736, 739-740 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). An individual is under a disability if she is unable to perform her previous work and cannot, considering her age, education and work experience, participate in any gainful employment that exists in the national economy. 42 U.S.C. §423 (d)(2)(A). Gainful employment is work usually done for pay or profit, regardless of whether a profit is realized. 20 C.F.R. §404.1572(b).

The ALJ uses a five-step analysis to determine whether a claimant is disabled. 20 C.F.R. §404.1520(a)(4)(i – v). Under this analysis, the ALJ must inquire in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's severe impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; meaning whether the claimant can still

work despite the claimant's physical and mental limitations, which is referred to as the claimant's residual functional capacity ("RFC"); and (5) whether the claimant is capable of performing work in light of the claimant's age, education and work experience. *Id.*; *see also Liskowitz*, 559 F.3d at 740. After the claimant has proved that she cannot perform her past relevant work due to the limitations, the Commissioner carries the burden of showing that a significant number of jobs exist in the national economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

B. Legal Standards Relating to the Use of Vocational Experts

At step five, the ALJ can rely upon the reliable testimony of a VE to establish the Commissioner's burden of proof. *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008); *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009). But in doing so, the ALJ has an affirmative duty to (1) identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by a VE and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), and (2) explain in the determination or decision how any conflict that has been identified was resolved. SSR No. 00-4p. Seventh Circuit case law has addressed this issue. *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009); *Overman*, 546 F.3d at 462-65. Basically, the ALJ must first ask the VE if a conflict exists. Next, the claimant's attorney should object to any conflict that the attorney believes exists, but the failure to do so does not result in forfeiture of the issue on

5

appeal. If the claimant's attorney does not object and address the conflict the conflict must be "obvious enough" that the ALJ would have identified the conflict absent the objection. *Terry*, 580 F.3d 478; *Overman*, 546 F.3d at 462-65. Of course, after the ALJ fulfills her duty by asking the VE if a conflict exists, for the claimant to prevail at all, there must, in fact, be a conflict. *Terry*, 580 F.3d at 478.

### III. DISCUSSION

A. Contentions of the Parties

In asserting that the ALJ's decision was not supported by substantial evidence, the Claimant contends that the matter should be remanded for two (2) reasons. First, the Claimant asserts that the ALJ failed to resolve an alleged conflict between the VE's testimony and the DOT. Dkt. #15-1, p. 11- 13. Second, the Claimant perfunctorily asserts that the ALJ's hypothetical did not accurately describe all of the Claimant's limitations. Dkt. #15-1, p. 14.

The Commissioner perfunctorily contends that the ALJ did not err in either regard. The Commissioner argues that no apparent conflict existed between the VE's testimony and the DOT. Dkt. #18, p. 5-6. Moreover, the Commissioner argues that the ALJ accounted for the Claimant's limitations in the RFC. Dkt. #18, p. 4.

B. Analysis

    1. There Is No Conflict, Let Alone Apparent Conflict, Between the VE's Testimony and the DOT.

Because the ALJ relied upon both jobs the VE identified that the Claimant could perform and the Claimant asserts there is a conflict, it is important to state the job definitions for each. According to the DOT, an "information clerk" "provides

6

travel information for bus or train patrons: Answers inquiries regarding departures, arrivals, stops, and destinations of scheduled buses or trains. Describes routes, services, and accommodations available. Furnishes patrons with timetables and travel literature. Computes and quotes rates for interline trips, group tours, and special discounts for children and military personnel, using rate tables." DOT 237.367-018. For strength, the description of information clerk provides the following: "Light Work – Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly . . . to move objects. Physical demand requirements are in excess of those for Sedentary Work." The intellectual development level for an information clerk is Level 4, which means that the person can "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form."

According to the DOT, a "route-delivery clerk" "[p]repares itemized delivery sheet for items of merchandise to be delivered by truck drivers, grouping and routing deliveries according to designated districts: Copies information, such as name, address of consignee, type of merchandise, number of pieces, and mailing designation, from records onto delivery sheet. Locates and selects merchandise and verifies against delivery sheet specifications. May arrange for unloading of merchandise from freight cars, transport trucks, or ships, into consignees' trucks. May keep records of and arrange for storage of undelivered merchandise." For

7

strength, the description of route-delivery clerk provides the following: "Light Work – Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly . . . to move objects. Physical demand requirements are in excess of those for Sedentary Work." The intellectual development level for a route-deliver clerk is Level 2, which means the person can "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."

Interestingly, the Claimant's asserted "apparent" conflicts are less than clear. But no conflicts exist, let alone "apparent" conflicts that are so obvious that the ALJ would have identified them *sua sponte*. The Court, nevertheless, has identified the following alleged "apparent" conflicts asserted by the Claimant. At the outset, it should be remembered that the ALJ specifically found, and provided in the hypothetical to the VE, that the Claimant could "understand, follow, and remember concrete instructions" so that the Claimant could "meet, greet, make change, simple instructions and directions." R. 50. The ALJ incorporated these findings into the RFC by stating the following: "[The Claimant] is able to follow and understand concrete instructions, but is limited to superficial interpersonal contact with supervisors, co-workers, and the public, which includes meeting, greeting, making change, and giving simple instructions and direction." R. 13.

First, the Claimant asserts an apparent conflict between the VE's testimony and the DOT relating to the intellectual development level. The Claimant's focus

8

here seems to be that the jobs require the ability to follow written instructions. Dkt. #15-1, p. 11. For information clerk, the intellectual development function allows for interpretation of instructions in *oral* form. The Claimant's argument ignores oral instructions. With respect to route-delivery clerk, the Claimant argues that the reasoning level is "'R2,' which requires the worker to 'carry out *detailed . . . written* or oral instructions.'" Dkt. #15-1, p. 11. (emphasis and ellipsis in original). But this argument again fails to consider that the DOT and the hypothetical provided to the VE provided for spoken (i.e. "oral") instructions. More troubling, however, is that the Claimant's argument is based upon an improper use of an ellipsis to eliminate a key aspect of the definition. As stated above, the definition provides for "detailed but uninvolved written or oral instructions." The Claimant's argument conveniently omitted by using an ellipsis two key words: "but uninvolved." *See In re Radcliffe*, 563 F.3d 627, 633 (7th Cir. 2009); *Aniero Concrete Co. Inc. v. New York City Construction Authority*, 308 F. Supp. 2d 164, 198 (S.D.N.Y. 2003) (selective quoteing by improperly using an ellipsis "sails a bit too close to the ethical reefs"). The Claimant only compounded this egregious and intentional redaction by highlighting "written" and ignoring "oral."

Second, the Claimant baldly asserts that both jobs "require *frequent* reaching and handling." Dkt.#15-1, p. 11, 13. (emphasis in original). As shown above, nothing in either job description requires frequent reaching and handling. The most charitable explanation the Court can give to this argument is that the Claimant has confused exertion requirements with reaching and handling. But the

9

strength required (exertional requirements) to move objects is very different than reaching and handling. SSR No. 96-9p; SSR No. 85-15; SSR No. 83-10 (all distinguishing exertional and nonexertional limitations and restrictions). Indeed, reaching and handling are, by definition, nonexertional activities. 20 CFR §404.1569a(a),(b).

Third, the Claimant argues that the job of information clerk "*likely* would extend to something more than merely giving simple instructions or directions." Dkt.#15-1, p. 13. (emphasis added). But the complete job description for information clerk provides the following: "Answers inquiries regarding departures, arrivals, stops, and destinations of scheduled buses or trains. Describes routes, services, and accommodations available. Furnishes patrons with timetables and travel literature. Computes and quotes rates for interline trips, group tours, and special discounts for children and military personnel, using time table." DOT 237.367-018. That job description simply does not require more than giving simple instructions or directions.

Fourth, the Claimant argues that the job of route-delivery clerk would "likely" require "(1) preparing delivery schedules which identify the merchandise to be delivered and the routes to be taken, and (2) locating and preparing the merchandise to be delivered. . ." Dkt.#15-1, p. 13. As shown above, the DOT job description of route-delivery clerk essentially includes these functions. But there is no evidence that the VE's testimony conflicts with these functions. Again, the ALJ included the following in the hypothetical to the VE: the Claimant could

10

"understand, follow, and remember concrete instructions" and could "meet, greet, make change, and simple instructions and directions." R. 50. The Claimant fails to identify the conflict; instead, the Claimant merely asserts that a conflict exists and that it is obvious. The Court disagrees. The Claimant goes further and asserts that a conflict exists because it is "likely" that a route-delivery clerk would be involved in "*supervising* the loading of the merchandise" and "giving *detailed* instructions to delivery drivers." Dkt.#15-1, p. 13. But the job description of route delivery clerk contains no supervisory responsibilities, nor even hints at supervision. Likewise, the job description is silent as to the level of instructions that is required. An adjective like "detailed" is important; its absence from the job description is telling.

The ALJ fulfilled its initial duty by asking the VE if there were any conflicts between her testimony and the DOT. R. 47. The Claimant's attorney did not object or identify any conflicts. The Claimant's alleged conflicts are not, in fact, conflicts at all. And even if they were conflicts, they were not so obvious as to require the ALJ to identify them on her own. The Claimant's arguments are without merit.

2. The ALJ's Hypothetical Accurately Described the Claimant's Limitations.

The Claimant picks nits with the ALJ's hypothetical provided to the VE by contrasting the ALJ's RFC with the hypothetical and selectively quoting the record. The Claimant selectively quotes and highlights the ALJ's decision as follows: the Claimant "exhibits moderate limitations in his capacity for concentration, persistence, and pace, *indicating that he has problems following written instructions, but can follow spoken instructions if given in single steps.*" Dkt.#15-1,

p. 14 quoting R. 18 (emphasis in quotation). But the Claimant conveniently failed to cite the very next sentence in the ALJ's decision which states the following: "Therefore, his residual functional capacity restricts him to work where concrete instructions are given." R. 18. Generally, a sentence concluding an analysis that starts with the word "therefore" contains the key culmination of a thought. Ignoring that type of sentence to try to make a point is less than persuasive, particularly when if follows a highly suspect use of an ellipsis to remove key terms in a controlling document. Moreover, in the ALJ's hypothetical provided to the VE, the ALJ stated that the Claimant could "understand, follow, and remember concrete instructions" and could provide "simple instructions and directions." R. 50. A simple comparison between the RFC – as stated in the sentence that the Claimant ignored – and the hypothetical shows that the hypothetical accurately described all of the Claimant's limitations. *See Eichstadt v. Astrue,* 534 F.3d 663, 668 (7th Cir. 2008) (hypothetical need not contain every detail).

## IV. CONCLUSION

For the reasons stated above, the Claimant's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted. Judgment is entered in favor of the Commissioner.

It is so ordered.

Entered: February 13, 2014

**Iain D. Johnston**
**U.S. Magistrate Judge**